UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

ZHANG, YU LIANG, et al.,                  :

               Plaintiffs,       :       96 Civ. 8229 (LMM)

           - v -                       :

JANET RENO, United States Attorney  :
General and EDWARD J. McELROY, Acting
District Director of the Immigration :
and Naturalization Service for the
New York District,                   :

              Defendants.       :

------------------------------------x

CHEN, BEN SHENG, et al.,                  :

               Plaintiffs,       :       97 Civ. 759 (LMM)

           - v -                       :

EDWARD J. McELROY, District Director :
of the Immigration and Naturalization
Service for the New York District    :
and JANET RENO, United States
Attorney General,                    :

              Defendants.       :

------------------------------------x

CHI, SAN DI, et al.,                      :

               Plaintiffs,       :       97 Civ. 6759 (LMM)

           - v -                       :

JANET RENO, United States Attorney  :
General and EDWARD J. McELROY,
District Director of the Immigration :
and Naturalization Service for the
New York District,                   :

              Defendants.       :

------------------------------------x

```
------------------------------------x
CHENG, HSIU SHUN, et al.,                :

                    Plaintiffs,          :       98 Civ. 3838 (LMM)

              - v -                      :

JANET RENO, United States Attorney       :
General and EDWARD J. McELROY,
District Director of the Immigration     :
and Naturalization Service for the
New York District,                       :

                    Defendants.          :

------------------------------------x
ZHENG, XIANG GUAN,                       :

                    Plaintiffs,          :       98 Civ. 4257 (LMM)

              - v -                      :

JANET RENO, United States Attorney       :
General and EDWARD J. McELROY,
District Director of the Immigration     :
and Naturalization Service for the
New York District,                       :

                    Defendants.          :

------------------------------------x
```

MEMORANDUM AND ORDER

McKENNA, D.J.,

1.

Plaintiff Zhu, Xin Ju (96 Civ. 8229) moves for summary judgment.  The government opposes the motion and cross-moves, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 41(b), for dismissal of all of the above actions.  Plaintiff Zheng, Xiang

Guan, opposing the motion, also moves for a severance of his case (98 Civ. 4257) from the other cases.

**2.**

The government has shown that the actions in which they are plaintiffs are moot as to a number of individual plaintiffs. See: Gov't Mem. at 1 n.1 (Lin, Xian Qin; and Chen, Ben Sheng); id. at 9 (Zhang, Yu Liang; Chen, Hai; Dai, Guang Tai; Shao, Xiang Chao; Zhang, Min Lu; Guo, Hou Li; Chen, Chong Li; Chen, Ji Hao; Chi, San Di; Lin, Zhen; and Zheng, Zheng Mao); id. At 9-10 (Huang, Qing Shen; Zhang, Zi Qiao; Yu, Chen Wei; Zhu, Xin Ju; Lee, Yung; Cheng, Hsiu Shun; Lin, Jian You; Yang, Guo Sheng; Xiao, Yong; Yang, Ji Guan; and Zhang, Yu Yuan); see further, Gov't Mem. at 17-21. As to these plaintiffs, the action is dismissed as moot, pursuant to Fed. R. Civ. P. 12(b)(1).

**3.**

In considering the government's motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts all of the factual allegations of the complaints as true, and draws all reasonable inferences in plaintiffs' favor.

Plaintiffs in the first four of the above actions are citizens of China that entered the United States without inspection and admission or parole. They

> claim that between June 1993 and June 1994, they
> submitted individual applications to the former INS
> seeking discretionary adjustments of their
> respective immigration statuses to that of lawful
> permanent residents of the United States

2

("adjustment applications" or "'green card' applications"), pursuant to § 245(a) of the Immigration and Nationality Act of 1952, as amended ("INA"). Plaintiffs claim they filed their adjustment applications pursuant to the Chinese Student Protection Act of 1992 ("CSPA"), which extended significant advantages to qualified Chinese nationals seeking lawful immigration status. Plaintiffs claim the INS denied their respective applications because they lacked a statutory prerequisite to adjustment, i.e., lawful admission to the country. Plaintiffs claim that notwithstanding their entries without inspection, the INS should have considered them eligible to seek adjustment under former INA § 245(i), which was enacted after the period for CSPA applications had closed, and which, until its initial expiration in 1998, permitted aliens to cure their unlawful entries by paying a "superfee." In these consolidated actions, plaintiffs seek, inter alia, Orders directing the Government to consider them eligible for adjustment under the CSPA and INA § 245(i), and to reconsider their adjustment applications.

(Gov't Mem. at 4-5.)

In Ri Kai Lin v. Bureau of Citizenship and Immigration Services, 514 F.3d 251 (2d Cir. 2008), the Second Circuit, on a petition for review of a decision of the Board of Immigration Appeals, held that an individual in the same situation as that of the plaintiffs described above by the government was not entitled to an adjustment of status. 514 F.3d at 254-55. The same result must be reached here.

The complaints in the first four of the above actions are dismissed as to all plaintiffs other than those as to whom, in Section 2 of this Memorandum and Order, the Court dismissed the complaint as moot; and, should it be found that an action is not

3

moot as to any such plaintiff, then the complaint is dismissed as to that plaintiff under Ri Kai Lin.  The motion of Zhu (96 Civ. 8229) is denied as moot because the action is moot as to him, or if not, the complaint in which he is joined as a plaintiff is dismissed under Ri Kai Lin.

**4.**

The situation in the fifth of the above cases (98 Civ. 4257) is somewhat different:  plaintiff Zheng's complaint alleges that "[h]e did make one trip to the People's Republic of China from June 15, 1994 to June 25, 1994.  He was granted advance parole for his trip by the U.S. Department of Justice, Immigration and Naturalization Service on June 2, 1994."  (Complaint, ¶ 6(e) (citation omitted).)  A copy of the Authorization for Parole is annexed as Exhibit D to Plaintiff Zheng's Opposition.

The government does not, in its Rules 12 and 41 motion, dispute Zheng's allegations, but it does argue that the fact that Zheng "was granted a humanitarian 'advance parole' to reenter the United States after traveling to China in June 1994 . . . does not render his claims any more cognizable because that grant of advance parole did not 'cure' his initial[] entry without inspection." (Gov't Mem. at 15-16 n.13.)  For reasons set forth below, the Court disagrees.

The Court first concludes, as a preliminary matter, that the factual difference in Zheng's case in comparison with those of the plaintiffs in the first four of the above cases is a sufficient

basis on which to grant Zheng's motion for a severance of his case from the others.  The government does not assert that his case is moot, nor does Ri Ki Lin, in light of Zheng's advance parole allegation, dispose of his claim.

The Court further concludes that dismissal of Zheng's case under Rule 41 for lack of prosecution is not warranted.  Zheng was represented initially by -- was, in essence, a victim of -- Robert E. Porges.  (See Gov't Mem. at 5 n.6, regarding legal proceedings against Mr. Porges.)  His present counsel only recently appeared.

The authorities cited by the government -- 58 F.R. 35,832, 35,835 (July 1, 1993), Yeung v. Reno, 868 F. Supp. 53 (S.D.N.Y. 1994), aff'd without published opinion, 57 F.3d 1062 (2d Cir. 1995) (table), Lin v. Meissner, 855 F. Supp. 4 (D.D.C. 1994), aff'd sub nom. Qi-Zhuo v. Meissner 70 F.3d 136 (D.C. Cir. 1995), and Executive Order 12,711 (55 F.R. 13897, April 11, 1990) -- do not require dismissal of Zheng's claim in light of subsequent authority cited by Zheng -- Immigration and Naturalization Service and Department of Justice, Adjustment of Status; Certain Nationals of the People's Republic of China, 62 F.R. 63249 (Nov. 28, 1997).

In Executive Order 12,711, the first President Bush in 1990 (prior to enactment of the Chinese Student Protection Act of 1992 ("CSPA")[1]), ordered, inter alia, the Attorney General "to take any steps necessary to defer until January 1, 1994, the enforced

---

[1] Publ. L. No. 102-404, 106 Stat. 1969-71 (1992).

departure of all nationals of the People's Republic of China (PRC) and their dependants who were in the United States on or after June 5, 1989, up to and including the date of this order (hereinafter 'such PRC nationals')," Exec. Order 12,711, Sec. 1, and the Secretary of State and the Attorney General "to take all steps necessary with respect to such PRC nationals (a) to waive through January 1, 1994, the requirement of a valid passport and (b) to process and provide necessary documents, both within the United States and at U.S. consulates overseas, to facilitate travel across the borders of other nations and reentry in the same status such PRC nationals had upon departure." Id. ¶ 2.  The government argues that Sec. 2 of the Executive Order "directed that Chinese nationals permitted to reenter the United States under grants of advance parole are deemed to 'reenter the United States in the same status [they] had upon departure,'" so that Zhang's reentry under a grant of advance parole is irrelevant, and leaves him in the same situation as the plaintiffs in the first four cases.  (Gov't Mem. at 15-16 n.13.)

In 1993, the Immigration and Naturalization Service ("INS") promulgated an interim rule to implement the CSPA which had been passed the previous year.  Department of Justice, Adjustment of Status; Certain Nationals of the People's Republic of China, 58 F.R. 35832 (July 1, 1993).  The Supplementary Information preceding the interim rule, under the heading "Eligibility for Adjustment of Status," states that:  "Persons who entered the United States

6

without inspection are not eligible for CSPA benefits." <u>Id.</u> at 35832.  The government cites this statement.  (Gov't Mem. at 15 n.3.)  The preceding sentence states that:  "... CSPA applicants must meet the requirements of section 245(a) of the [Immigration and Nationality] Act, which requires that adjustment applicants to establish that they were inspected and admitted or paroled into the United States by an immigration officer." <u>Id.</u>

The INS (the predecessor of Citizenship and Immigration Services (Gov't Mem. at 3 n.4) "granted advance parole liberally under the Executive Order." <u>Qi-Zhuo</u>, 70 F.3d at 141.

> However, the agency became less generous when it realized that its advanced parole grants had created a "loophole" with respect to the adjustment of all [aliens who initially entered without inspection] (not just PRC nationals under the CSPA) who left the country on advanced parole and who could then claim eligibility for adjustment under § 245(a) upon return.  The INS has since attempted to close this loophole, and we do not believe the agency's former practice in any way constituted a binding interpretation of the CSPA.

<u>Id.</u> (footnote omitted).  The "loophole" was closed by examining "advanced parole applications for bona fide humanitarian need." <u>Id.</u> at 141 n.2.[2]

---

[2] It appears that INS, in a 1993 Cable (INS Cable # 5, 245-C/HQ 739.3-C [Aug. 13, 1993], <u>quoted in</u> 70 Interpr. Releases 1095 (Aug. 23, 1993), determined that "'parole pursuant to the Executive Order . . . is inappropriate.'" <u>Id.</u>  However, "[t]he Cable concluded that, under any circumstances, parole requests unsupported by evidence of emergent or humanitarian need (including requests for the sole purpose of qualifying for CSPA benefits) should be denied." <u>Id.</u> (citation omitted).  Zheng's advance parole document indicates that his advance parole was given for humanitarian reasons.  (Complaint, Ex. D.)

In <u>Yeung</u>, the district court, in the course of determining, in relation to a CSPA applicant's district court fee application, whether INS' denial of a CSPA application was reasonable, held that "Congress <u>could</u> have intended that those aliens who initially entered the United States illegally be barred from the protections of the CSPA, despite later legal conduct." 868 F. Supp. at 58 (emphasis added). (<u>See</u> Gov't Mem. at 15 n.13.) The district court also noted, however, with respect to the CSPA, that "neither the statute nor implementing regulations are explicit about whether Congress intend the CSPA to cover a Chinese national who originally entered without inspection but was later admitted and inspected." <u>Id.</u> (citing <u>Lin</u>, 855 F. Supp. at 8 n.6).

In <u>Lin v. Meissner</u> (affirmed in <u>Qi Zhuo</u>), the district court stated that it "cannot accept plaintiff's position that in enacting the CSPA, Congress intended to set aside § 245 of the [Immigration and Nationality Act] in its entirety with respect to all PRC nationals, regardless of their mode of entry into the United States." 855 F. Supp. at 7. (<u>See</u> Gov't Mem. at 15 n.13. In <u>Lin</u>, th CSPA applicant had been denied advance parole, and the district court deferred to the INS District Director's determination that plaintiff failed to submit a supportable claim of emergent or humanitarian aid. <u>Id.</u> at 9.

On the basis of the foregoing, a non-frivolous although not compelling argument can be made that Zheng's allegation that he "was granted a humanitarian 'advance parole' to reenter the United

States after traveling to China in June 1994" (Gov't Mem. at 15
n.13 (citing complaint ¶ 6(e))) "did not 'cure' his initial entry
without inspection."  (Id.)

In a statement subsequent to the authorities cited by
Zheng, however, -- Department of Justice, Immigration and
Naturalization Service, Adjustment of Status; Certain Nationals of
the People's Republic of China 62 F.R. 63249 (Nov. 28, 1997) (see
Pl. Mem. at 6) -- INS (in a section entitled "Entry Without
Inspection") made clear its interpretation of Section 245(a) of the
Immigration and Nationality Act, as applicable to CSPA applicants:
"A person who was paroled into the United States upon his or her
last arrival meets the requirements of Section 245(a) of the Act
regardless of whether or not he or she had previously entered this
country in violation of the immigration laws."  F.R. 63251.

Given the deference due to an agency's reasonable
interpretation of a statutory scheme it must administer, Chevron,
U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S.
837, 844-845 (1984), and in the absence of binding authority to the
contrary, the Court denies the government's motion for dismissal of
Zheng's claim (98 Civ. 4257).

*          *          *

The government's cross motion for dismissal is granted as
to all plaintiffs in 96 Civ. 8229, 97 Civ. 759, 97 Civ. 6759 and 98
Civ. 3838 (for the respective reasons set forth above in the cases
of different individuals), and denied in 98 Civ. 4257.

9

Plaintiff Zhu's motion for summary judgment in 96 Civ. 8229 is denied.

Plaintiff Zheng's motion for a severance of his case, 98 Civ. 4257 is granted.

The Court will hold a status conference in <u>Zheng v. United States</u> (98 Civ. 4257) on May 4, 2009 at 3:30 P.M.[3]

SO ORDERED.

Dated:  April 2/, 2009

Lawrence M. McKenna
U.S.D.J.

---

[3] Copies of this Memorandum have been sent to counsel for Zhu, Xin Ju, and Zheng, Xiang Guan, and to the government.  The government is to forward copies to all non-represented plaintiffs at their last known addresses.

10